## STATE VS. BRANDON.

PRACTICE: *Indictment, defects in, how reached.*

Objections to an indictment on the ground that the names of the witnesses, upon whose testimony it was found, are not indorsed thereon, or that the indictment was not presented by the foreman of the grand jury and filed in court as required by law, can only be reached by motion to set aside the indictment, and is not ground of demurrer.

CONSTRUCTION OF STATUTES: *Grocery licenses, how and by whom issued.*

Sec. 155 of the revenue law of 1871 does not repeal the acts of January 11, 1855, and February 14, 1867, respecting the granting of licenses for the retail of vinous or spirituous liquors, and, under these acts, the county court is the only authority in the state to grant such license; and, where a party has a license signed by the clerk and authenticated by the seal of the county, and countersigned by the collector, he has all the law requires him to have, and the presumption will be that the county court authorized the issue of the license upon a proper petition presented to it.

APPEAL from *White* Circuit Court.

Hon. JOHN WHYTOCK, Circuit Judge.

*T. D. W. Yonley*, Attorney General, for appellant.

McCLURE, C. J.    The only question in this case is the sufficiency of the following indictment:

"WHITE CIRCUIT COURT — *The State of Arkansas v. William L. Brandon—Indictment.*

"The grand jury of White county, in the name and by the authority of the state of Arkansas, accuse William L. Brandon of the crime of keeping grocery without license, committed as follows, viz.: The said William L. Brandon, on the 20th day of January, A. D. 1873, in the county and state aforesaid, unlawfully did keep a grocery for the retail of ardent spirits by quantities less than one quart, without first having obtained a license from the county court of said coun-

ty authorizing him to exercise the privilege of a grocery keeper, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the state of Arkansas."

This indictment was demurred to, but the grounds of demurrer are not stated. Under the criminal code there are five grounds or demurrer (section 165):

*First.* Where it appears from the indictment that the offense was not committed within the local jurisdiction of the court.

*Second.* Where it does not substantially conform to the requirements of article two of chapter two of title six.

*Third.* When more than one offense is charged in the indictment.

*Fourth.* Where the facts stated do not constitute a public offense.

*Fifth.* Where the indictment contains matter which is a legal defense or bar to the prosecution.

These are the only grounds of demurrer allowed in a criminal case; and tested by these rules, we incline to the opinion that the demurrer ought not to have been sustained. The indictment before us is a literal copy of that submitted to this court in the case of *Ramsey v. The State,* 11 Ark., 35, with the single exception of the word " unlawful," which cannot, in our opinion, invalidate it.

Section 119 of the Criminal Code declares that " when an indictment is found, the names of all witnesses who were examined must be written at the foot of or on the indictment," and section 120 declares that " the indictment must be presented by the foreman of the grand jury to the court, and filed with the clerk, and remain in his office as a public record." The requirements of neither of these sections have been complied with, if we treat the copy of the indictment before us as a literal copy of the one before the court; but this is not a

ground of demurrer.    Defects of this kind can only be reached by a motion to set aside the indictment, which motion should be made before filing a demurrer.    Sec. 159, Crim. Code.

If the appellee intended to raise the question as to whether or not the legislature, under the constitution, could tax or authorize an indictment for keeping a grocery for the retail of ardent spirits, our response to that proposition will be found in the case: *Scott v. The State*, and *Henry v. The State*, 26 Ark., 523.

Since writing the foregoing opinion, we have been asked to recall the same and announce our conclusions as to the effect sec. 155 of the revenue law of 1871 may have on the question.    It is true our attention was not called to the section mentioned, and for this reason, and on our own motion, we have recalled the opinion.

It is claimed that sec. 155 dispenses with the necessity of procuring a license or permit from the county court to retail vinous or spirituous liquors in less quantities than one quart, and that all a person desiring a license to retail ardent spirits has to do is to go to the collector and pay the price fixed by law for a license, and that there his duty ends.    In other words, that the county court has nothing to do with the matter of selling ardent spirits, and that no petition of the resident voters of the political township is required since the enactment of the revenue law of 1871.

Let us examine the legislation on this subject and see if the view taken by the appellee can be sustained.    In examining Gould's Digest (ch. 148), under the head of revenue, we find the following sections:

"Sec. 80. In all cases where licenses are taxable by law, and required to be issued by the county court or the clerk thereof, the clerk—unless otherwise provided in some other law—shall, from time to time, issue as many blank licenses

of each kind as may be necessary, and deliver them to the collector, and charge him with the amount thereof, specifying in every charge the number and amount of each kind of license.

"Sec. 81. Each blank license shall be signed by the clerk and authenticated by the seal of the court; and the collector, in granting every such license, shall fill up and countersign one of the blank licenses delivered to him by the clerk; and no license not so signed, countersigned and authenticated shall be available to the party claiming to act under the same.

"Sec. 82. The several county courts shall, at each regular term, cause the collector to settle his account of all blank licenses with which he stands charged; and, after giving him credit for all licenses returned, shall ascertain the amount due from him on that account, and shall cause the same to be entered of record, so as to show the amount due the state and county respectively."

The practice of delivering blank licenses to the collector originated more than thirty-five years ago, and is not a new thing, as the appellee seems to suppose. It seems that up to January 11, 1855, all a person desiring to retail ardent spirits had to do to obtain a license was to go to the collector and pay for the same, and ply his vocation. But in January of 1855, the legislature made an attempt to, in some respects, restrain the sale of ardent spirits; and instead of leaving the question, whether or not it should be sold in the community, to the discretion of the applicant for license, vested the discretion in a majority of the resident voters of the township where the vinous or ardent spirits were to be retailed. Said act is as follows:

"Sec. 1. Hereafter it shall not be lawful for the county court of any county in this state to grant a license to any person for the retail of vinous or ardent spirits by less quantities than one quart, except as hereinafter provided.

"Sec. 2. Every person who may become desirous to obtain a license to establish any grocery or dramshop shall first produce to the county court of the county in which he proposes to obtain said license, a petition setting forth the political township in which the same is to be established, signed by a majority of the resident voters of the same, and pay into the county treasury such tax for said license as may be prescribed by the court under the existing laws.

"Sec. 3. Whenever any person shall file the petition and pay the money into the county treasury of the proper county, as prescribed in section two, it shall be the duty of the county court to grant said applicant a license to establish said grocery or dramshop in the township mentioned in said petition, subject to all the laws now in force for the government of grocery and dram shop keepers."

It will be observed that the third section of this act, which is the tenth section of chapter one hundred and sixty-nine of Gould's Digest, makes it the imperative duty of the county court, when the applicant presented a petition signed by a majority of the resident voters of the political township where the grocery or dramshop was to be established, and the evidence that he had paid into the county treasury the amount fixed by the county court as the price to be paid for such privilege, to grant the license. On the 14th of February, 1867, the legislature seems to have been impressed with the idea that a majority of the resident voters of a political township might not know what was best for them, and it passed another act, which in effect repeals so much of the tenth section of chapter 169 of Gould's Digest, as vests the discretion in a majority of the resident voters, and clothes the county court with power to refuse the license, notwithstanding a majority of the resident voters may have signed the petition of the applicant, if in the opinion of the county court the inter-

est and general welfare of the county will be subserved thereby. No one can read these different acts without becoming impressed with the opinion that the legislature intended to place restrictions on the sale of vinious or ardent spirits by retail.

Under the acts we have alluded to, the inference is, that blank licenses for the sale of intoxicating liquors, after the passage of the act of January 11, 1855, up to the passage of the revenue act of 1871, were not delivered to the sheriff, and it is urged that because the law directs the delivery of grocery and dramshop license to the collector, that all restraints are removed from the retail of intoxicating liquors, and that neither the county court nor the resident voters of a political township can, in any manner, restrain or control its sale, and that the holder of a license may squat himself down where he pleases and furnish the motive power of crime without the assent of any one.

The section which it is said does away with the necessity of applying to the court for a license is as follows:

"SEC. 155.  It shall be the duty of the county clerk, from time to time, to issue blank licenses for the purposes mentioned in the preceding sections, and deliver them to the collector, and charge him with the amount thereof, specifying in every charge the number and amount of each kind of license. Each blank license shall be signed by the clerk, and authenticated by the county court, and the collector in granting every license shall fill up and countersign one of the blank licenses delivered to him by the clerk, and no license not so signed, countersigned and authenticated shall be available to any party claiming to act under the same."

Upon examination of this section, it will be found it is in substance but a reenactment of sections 80, 81 and 82 of chapter 148 of Gould's Digest.  It is true, that blank licenses

for the sale of vinous or ardent spirits were to be delivered to the collector by the provision of section 155; but the law pre-supposes that blank licenses will not be delivered to the sheriff, for the sale of vinous or ardent spirits, in excess of the grants made by the county court. It may be that the legis-lature intended to authorize any and every person to become a retail liquor dealer who would pay the price fixed on the privilege, and to repeal all legislation restraining the sale of intoxicating liquors; but if such was the intention, it is not clearly expressed. Repeals by implication are not favored, and we shall not indulge in a construction that deprives a community of the power of having a voice in preventing the keeping of a dram shop in its neighborhood, when there is no better argument in favor of its construction, than that it may increase the state and county revenue.

The revenue act of 1873 places a tax upon the sale of intoxicating liquors because the occupation of selling "was of no real use to society." While this is not evidence of an intent that it did not intend to dispense with the petition from the resident voters of the political township, or the action of the county court, it is evidence that it regarded the pursuit as pernicious, and, being so, we do not feel at liberty to indulge in the presumption that the legislature intended to either foster, promote or protect the sale of an article the immoderate use of which has contributed to and induced the commission of four-fifths of the crime committed in the state, and that annually costs the state and counties ten times the revenue derived from the tax imposed on the retailer.

Whether or not the appellee obtained a license from the county court is a matter of proof. There is no other authority in the state that can grant such a license. If the appellee has a license signed by the clerk, and authenticated by the seal of the county, and countersigned by the collector, he has all

that the law requires him to have. The license he is required to have comes from these officers, and if he have it, the presumption is, that the county court authorized the issue upon a proper petition presented to it. The county court, for the purpose of issuing or rather permitting such a license to be issued, is a court of original jurisdiction, and its proceedings in another cause cannot be collaterally inquired into. If it permitted the collector to deliver a license to the appellee, without the proper petition first being filed, it has violated the law; but because this is so, does not establish the fact that the appellee was keeping grocery without first having obtained a license from the county court. The license itself is evidence that it was granted by the county court, and is protection to the person therein named, no matter whether the records of the court show the granting of the license or not.

The judgment is reversed and cause remanded, to be proceeded in not inconsistent with this opinion.