Chamberlain v. State.

---

## CHAMBERLAIN V. STATE.

1. STATUTES: *General and special : Construction : Repeals.*

   A general affirmative statute does not repeal a prior particular statute, or particular
   provisions of a prior statute, upon the same subject, unless negative words are used,.
   or unless there be an invincible repugnancy between the two. In the absence of such
   repugnancy, or negative words, the more specific statute or provision will control the
   general, without regard to their order and dates ; and the two acts will be interpreted
   as operating together—the specific provisions qualifying or furnishing exceptions to.
   those which are general.

Chamberlain v. State.

2. LIQUORS: *Statutes punishing. sale without license: Exceptions in favor of wine manufacturers.*

Section 15 of the act regulating the sale of liquors, approved March 8, 1879, (*Mansf. Dig. sec.* 4520), which confers an exemption from the necessity of taking out liecense, on certain manufacturers of wine, is not repealed by sections 4 and 6 of the revenue act of March 31, 1883, which impose a tax of $700 upon all venders of vinous and spiritous liquors, (*Mansf. Dig. secs.* 5592, 5594, 5596.) Nor does the latter act repeal the act of February 20, 1883, (*Mansf. Dig. sec.* 4524), which excepts from the operation of the " Three Mile Law," wine manufacturers who sell in quantities of one quart or more, in sealed bottles.

APPEAL from *Pulaski* Circuit Court.
J. W. MARTIN, Judge.

*Sanders & Watkins*, for appellant.

This case is not within the doctrine of 45 *Ark.*, 93, which applies to cases of single sales only and not to regular vendors.

Reviews the acts 1879, 1881, 1883, and contends that up to March 30th, 1883, no one will question the appellant's right to sell. The question then is: whether *sec.* 15 *act March* 8, 1879, *act of February 20th*, 1883, and *act March* 26, 1883, under all of which appellant could sell, were repealed by the *Rev. act March* 31, 1883, *secs.* 4 *and* 6.

The act of 1879, and the subsequent amendments, was a *special* law, and the act of 1883 a *general* law, and unless the latter expressly repeals the former, or the terms of the two acts are irreconcilably in conflict, the former is not repealed. 45 *Ark.*, 93; 4 *Ark.*, 415.

The two acts do not cover the same field of legislation, one is to regulate the liquor traffic, the other to raise revenue; there is no conflict, and both may well stand and be construed together. 3 *Ark.*, 276; 11 *Id.*, 47; 23 *Pick.*, 93; 1 *Greenleaf*, 240; 37 *Ark.*, 494; *Sedg. on Const. and Stat. Law*, 2d *Ed.*, 254; 35 *Ark.*, 56; 34 *Id.*, 264; 24 *Id.*, 155.

Repeals by implication are not favored. 41 *Ark.*, 150;

24 *Id.*, 479; 31 *Id.*, 17; 10 *Id.*, 588; 23 *Id.*, 304; 24 *Id.*, 479.

*F. W. Compton and E. W. Kimball,* also for appellant.
*Dan W. Jones,* Attorney General, for appellee.

To support the declarations of law made by the trial court, we submit:

First: That the revenue law of 1883 is devoted to something more than the subject of raising revenue.

*Section 5592 and subdivision 5 of section 5595 of Mansf. Digest* provide the amount of license tax that shall be paid by those who "engage in the business" of selling "spirituous, vinous or malt liquors in this state."

There is no exception in favor of those who sell vinous liquors of their own manufacture in either of those sections.

*Section 5594 of the Digest,* taken from the revenue act of 1883, is directed—not to the subject of raising revenue, save by the enforcement of its provision by some one of the recognized methods of enforcing criminal law—but to the enforcement of a police regulation. And there is no exception in that section in favor of those who sell vinous liquors of their own manufacture. Hence we submit that *section 4520 of the Dig.* is repealed by *section 226 of the revenue act of 1883,* which expressly provides that all laws or parts of laws in conflict with it are repealed by it.

There is no exception in the statute, and the court can engraft none upon it.

*Atkinson & Tompkins,* also for appellee.

SMITH, J. By an information filed with a justice of the peace by the prosecuting attorney, Chamberlain was charged with engaging in the sale of vinous liquors without a license. He was convicted, and, on appeal to the circuit court, the cause was tried on the following agreed statement of facts:

" The defendant, E. H. Chamberlain, is the owner of a vineyard located in Pulaski county, State of Arkansas. From the grapes grown on said vineyard during the year 1887 the defendant manufactured wine, and he was on the 15th day of September, 1887, engaged in the business of, and did sell said wine in quantities less than five gallons, and the said wine was sold in sealed bottles containing not less than one quart, and said defendant did not have any license from the county court of Pulaski county, and was not at the time selling any other liquors, ardent, malt, vinous or fermented."

He was again found guilty and fined fourteen hundred dollars.

The license act of March 8, 1879, made it unlawful for any person, except manufacturers selling in original packages containing not less than five gallons, to vend any ardent, vinous, malt or fermented liquors, in any quantity or for any purpose whatever, without first procuring a license from the county court of the county in which such privilege was to be exercised. But it was declared that "this act shall not be held to apply to one who manufactures and sells wines in this state from native grapes or berries, or other fruits grown in this state, and who sells no other liquors, ardent, malt, vinous or fermented." *Session acts of* 1879, *p.* 33, *secs.* 1 *and* 15.

The object of the last mentioned provision was to encourage the planting of vineyards and the manufacture of wine in this state by discriminating in favor of native wines, against wines produced out of the state. Such discrimination, it was decided in *State v. Kate Marsh*, 37 *Ark.*, 356, was beyond the power of the legislature. But the entire section was not stricken out—only the discriminating clause —and the section was construed to exempt from the neces-

sity of taking out license all manufacturers of wine who sell only their own products. *Mansf. Digest, sec.* 4520.

In 1881 the legislature enacted the "Three Mile Law," which authorized the county courts, upon the petition of a majority of the adult inhabitants living within three miles of any church or institution of learning, to prohibit the sale of intoxicating liquors within the limits of the designated territory. This act contained no exception in favor of manufacturers of wines. But the amendatory act of February 20, 1883, excepted from its operation wine manufacturers who sold in quantities of one quart, or more, or in sealed bottles. *Session acts of* 1881, *p.* 140, *and of* 1883, *p.* 53.

On the 26th of March, 1883, the license act of March 8th, 1879, was amended so as to prohibit the sale of alcohol, or intoxicating spirits of any character which are used and drank as a beverage without license. The design of this enactment was to provide for a *casus omissus* pointed out in *State v. Martin,* 34 *Ark.,* 340, and *State v. Witt,* 39 *Id.,* 216; *session acts of* 1883, *p.* 192, *sec.* 1; *Mansf. Dig. sec.* 4507.

On the 31st of March, 1883, the legislature passed an act entitled "An act to amend and revise the revenue laws of Arkansas." This act imposes a tax of seven hundred dollars upon each and every vendor of spirituous, vinous or malt liquors doing business in the state for the term of one year or less. Every person wishing to engage in the business is required to pay for and take out a license for the privilege, under a penalty of a fine in double the amount of license he would be chargeable with. No exception is made in favor of manufacturers; and all laws inconsistent or in conflict with the act are repealed. *Session acts of* 1883, *p.* 199, *secs.* 4, 6 *and* 226; *Mansf. Dig. secs.* 5592–4, 5596.

The question which confronts us is, whether the general revenue law repeals by implication the prior acts which conferred an exemption upon manufacturers. For down to

March 31, 1883, there can be no serious controversy about the appellant's right to sell his manufactured wines with impunity, even in prohibition districts. And we apprehend no distinction can be made between the cases of manufacturers of wine, selling in sealed bottles containing not less than a quart, and manufacturers of other liquors, selling in original packages of not less than five gallons. If the 15th section of the act of March 8, 1879, (*Sec.* 4520 *Mansf. Dig.*) has been repealed, then the provisos to the first section of the same act (*Mansf. Dig., sec.* 4507) must also fall.

It is argued that the act of March 31, 1883, being the latest expression of the legislative will, supersedes the former provisions upon the subject and requires all dealers in vinous liquors to take out license. And such is its effect, if construed literally and grammatically. But subsequent laws do not abrogate prior ones unless they are irreconcilably in conflict. The courts have always leaned against implied repeals. A general affirmative statute does not repeal a prior particular statute, or particular provisions of a prior statute unless negative words are used, or unless there be an invincible repugnancy between the two. The more specific provision controls the general, without regard to their order and dates. The two acts are interpreted as operating together, the specific provisions furnishing exceptions and qualifications to the general rule. *Sedgwick on Stat. and Const. Law,* *second Ed., p.* 97 *et seq.,* and cases cited; *Bishop on Written Laws, secs.* 126 *and* 156 and cases cited.

Thus in *Williams v. Pritchard,* 4 *Durnford & East,* 2, and *Edington v. Bowman, Ib.* 4, an act of parliament had authorized individuals to enclose and embank portions of the soil under the river Thames and had declared that such land should be free "from all taxes and assessments whatsoever." The land tax act, subsequently passed, by general words embraced all the land in the kingdom. The question was,

1. STATUTES: General and special: Construction: Repeals.

whether the land mentioned in the former act was legally taxable. And the court of King's Bench decided it was not. The same principle was applied in *Blain v. Bailey*, 25 *Ind.* 165. An act passed in 1852 had exempted farm lands included within a city from taxation for municipal purposes. In 1857 the legislature gave the common council power to collect an *ad valorem* tax " on all property within such city." And it was held that the later act, being general and without negative words, did not take away the exemption given by the prior act, which was particular.

For another illustration see *Fitzgerald v. Champreys*, 2 *Johnson & Hemming's Ch.* 31.

But we need not go outside of our own reports for instances of application of this canon of construction. In *McFarland v. State Bank*, 4 *Ark.* 415, the acts of March the 3d and December the 10th, 1838, prescribed the rate of interest for the bank and fixed it higher than six per cent., without requiring it to be expressed in the contract, and gave ten per cent. per annum on all bonds, bills and notes which shall not be paid upon maturity or be protested, or upon which suits may be brought. The revised statutes which were declared to be the law of the land by an act of the General Assembly of the 14th of December, 1838, put in operation by the proclamation of the governor on the 20th of March, 1839, declared that no person or corporation shall directly or indirectly take a higher rate of interest for the loan or forbearance of money than six per cent. per annum unless it is so expressed in writing and then not exceeding ten per cent. Judge Lacy, in delivering the opinion of the court, said : " The rule of interest as prescribed in the revised code, may be properly denominated a general law, including all cases within its terms. It does not apply to cases not within the meaning or reason of the statute. The rate of interest as prescribed by the acts of the 3d of March and the 10th of

December, may justly be termed a special law, having ex-
clusive reference to the bank." And it was ruled that the
general law of interest, not referring to the bank by name,
did not repeal the special law on that subject, which was
applicable to the bank alone.

So in *State v. Brandon*, 28 *Ark*. 410, by acts passed in
1855 and in 1867, the county courts had the exclusive right
to grant license to retail vinous and spirituous liquors within
their respective counties. The applicant was required to
exhibit his petition, setting forth the political township in
which he proposed to do business, signed by a majority of the
legal voters resident within the township, and to pay into the
county treasury such tax for the privilege as the court might
prescribe. The revenue act of 1871 fixed the price of li-
cense at $100 and made it the duty of the county clerk to
sign blank licenses and place them in the hands of the col-
lector, who was to fill up, countersign and deliver them to
the parties carrying on any business which required to be
licensed. It was contended that the later act dispensed
with the necessity of procuring permission from the county
court to retail liquors, and that all a person, desiring to em-
bark in that business had to do was to apply to the collector
and pay the amount of the license. But it was held that the
power to license was vested solely in the county court, and
that it must be exercised in accordance with the previous
laws on the subject. Compare *House v. State*, 41 *Miss*. 737.

In *Blackwell v. State*, 45 *Ark*. 90, we had occasion to con-
sider whether the revenue act of March 31, 1883, which
visits a penalty of $1,400 for engaging in the sale of liquors
without having paid the tax, repealed so much of the license
act of March 8, 1879, as inflicted a fine of not less than $200,
nor more than $500 for selling without license. And we
arrived at the conclusion, that both provisions might well
stand together; the milder penalty being denounced against

occasional sales by unauthorized persons having no regular place of business, and the severer penalty being reserved for those who undertook to carry on the business without payment of the tax.

Again, in *Zerger v. Quilling*, 48 *Ark.* 157, we decided that the provision in the license act of March 8, 1879, fixing the collector's fee at one per cent. of the amount paid for liquor license, was not repealed by an apparently inconsistent provision in the revenue act of March 8, 1879. Although, in *Drew County v. Bennett*, 43 *Ark.* 364, it was ruled that the revenue act of March 31, 1883, repealed so much of the license act of March 8, 1879, as gave the county court any discretion in fixing the price of license. This was upon the idea that the legislature clearly intended to establish a uniform rate of $700 for this privilege throughout the state.

**2. LIQUORS:** Statutes regulating sale of: Exceptions: Repeals. It must be borne in mind that, in framing the act of March 31, 1883, the attention of the legislature was not specifically directed to the regulation of the sale of intoxicating liquors. That matter was already regulated by existing laws. The mind of the legislature was turned to the subject of revenue. And since the later act does not expressly contradict the former, and it is not necessary to give it a repealing effect, in order that its words may have any meaning at all, it will be construed as not intended to affect the more particular provisions of the prior law.

Our legislatures have for several years shown a disposition to foster this industry of wine making. The same body that enacted the law of March 31, 1883, by an act approved February 20, 1883, recognized the right of the wine manufacturer to sell his products in prohibition districts; and by another act, approved March 26, 1883, they continued the right of manufacturers of vinous and other liquors to sell in packages of five gallons without license. If they had intended to take away these privileges and exemptions, it is

reasonable to suppose they would have said so in express words, and would not have left so important a matter to inference.

The judgment is reversed and cause remanded with directions to dismiss the information.