UNION GUARANTY & TRUST CO. *v*. CRADDOCK.

Opinion delivered November 17, 1894.

1. *Foreign insurance company—Service of process.*

Where a foreign insurance company doing business in this State has filed with the auditor a stipulation that legal process affecting the company may be served on the auditor or a designated agent, in accordance with Mansf. Dig., sec. 3834, service of process in the manner stipulated is the only method of obtaining service upon such company which will authorize a valid personal judgment against it.

2. *Pleading—Matter of abatement—Waiver.*

Under the code of practice, a plea in abatement that the court has no jurisdiction of defendant's person for want of proper service is not waived by pleading in bar to the complaint, nor by appealing from an adverse judgment.

Appeal from Sebastian Circuit Court, Fort Smith District.

EDGAR E. BRYANT, Judge.

STATEMENT BY THE COURT.

The St. Paul German Insurance Company, being a foreign corporation, and doing business under the laws of Minnesota, with its home office or domicil at the city of St. Paul, in that State, desiring to transact business in this State, fully complied with the statutes in respect to the appointment of an agent and other things required in the laws regulating insurance in this State, and filed its bond, as required by the provisions of the act approved March 6, 1891, and previous acts regulating the same, with its co-defendant, the Union Guaranty & Trust Company, a domestic corporation, as one of its sureties, and thereby qualified itself to transact business in the State, for one year beginning June 4, 1891, and ending June 4, 1892.

The defendant insurance company then appointed Messrs. Adams & Boyle, of Little Rock, as its general agents in the State, Mr. Sam B. Adams of that firm having been the agent designated as the person upon whom service of process should be had to give jurisdiction of the person of the company in the courts of the State. Messrs. Adams & Boyle then appointed, in the name of the company, Messrs. Boyd & Shelby as local agents at Fort Smith, who, during the year, made a contract to insure the property of appellee, a resident and citizen of the Indian Territory, where also the property was and continued to be until destroyed by fire. The policy was actually executed, and the premium paid, in the city of Fort Smith, this State.

On the 14th day of April, 1892, the insurance company became insolvent, made an assignment of its effects for the benefit of its creditors to J. F. Frazen of St. Paul, who immediately discharged its general agents, Adams & Boyle, in Arkansas, and directed them to transact no further business for the company, but to act for

the assignee in matters necessary to the winding up of the business. Adams & Boyle immediately revoked the agency of Boyd & Shelby, giving them authority in their own name to arrange with policy holders as to cancellations and transfers to other companies, they (Adams & Boyle) assuming to pay the necessary expenses of the same for the accommodation and convenience of said, policy holders. The proof tended to show that the issuance of insurance policies and cancellation of the same is part of the ordinary business of an insurance company.

The appellee, Craddock, claiming to have suffered a loss of his property insured in the defendant insurance company in the year it was authorized to do business in this State, as aforesaid, instituted this action against said insurance company with the defendant trust company, one of the sureties on its bond, in the Sebastian circuit court, Fort Smith district, on the 3d day of June, 1892, and summons was issued and served, on the same or the next day, on Boyd, Shelby & Hall at Fort Smith, as agents of the insurance company, and on the sixth day of June, 1892, summons was served on L. B. Leigh at Little Rock, Pulaski county, as the president of the trust company.

The defendant insurance company made no appearance, but the appellant trust company appeared specially by leave of the court to file its motion to quash the summons and set aside the service of same, which is as follows : "Now comes the defendant, the Union Guaranty & Trust Company, and by permission of the court, previously had and obtained, to appear specially and file this motion to quash the summons herein and for no other purpose, and moves the court to quash and set aside service of summons herein for the following reasons : *First.* The St. Paul German Insurance Company is a foreign corporation, and the plaintiff is a non-resident of Arkan-

sas, and the alleged loss occurred in the Indian Territory. That heretofore, to-wit, on the 14th day of April, 1892, said insurance company, at St. Paul, Minnesota, made a general assignment to J. F. Frazen of said city, and on that day the authority of all its agents in this State was revoked, and especially was the agency of Boyd & Shelby, their local agents at Fort Smith, revoked on that day. *Second.* That the pretended service in this case on the St. Paul German Insurance Company was had on the said Boyd & Shelby on the 4th of June, 1892, at Fort Smith, Arkansas, and the pretended service on this defendant was made at Little Rock, in Pulaski county, Arkansas, on the 6th day of June, 1892, long after their respective agencies had been revoked. Wherefore the defendant prays the court to vacate and annul and set aside the service of the summons herein as to this defendant."

This motion was heard on evidence, and overruled by the court, and exceptions thereto were duly saved.

After the motion to quash was overruled, the defendant trust company filed its separate answer, which is as follows, to-wit:

1.   " And now on this day comes the defendant, the Union Guaranty & Trust Company, and without entering its appearance herein, says, by way of abatement of the writ in this behalf, that neither Milton P. Boyd, Edwin Shelby or Chas. Hall were, on the 3d day of June, 1892, nor have they, or either of them, been, since that day, the agents of the said St. Paul German Insurance Company at any place in the State of Arkansas, or elsewhere. That the only agents of the St. Paul German Insurance Company, upon whom service could be lawfully had in this State on the 3d of June, 1892, or since that time, were W. S. Dunlop and Samuel B. Adams, both of Little Rock, in Pulaski county, Arkansas, both of whom were on the 13th day of September, 1889, by

written stipulation filed by the said St. Paul German Insurance Company in the office of the Auditor of this State, designated, as required by law, as agents for said company upon whom any legal process might be served, and wherein it is also provided that, in case the said St. Paul German Insurance Company should cease to do business in this State, or to maintain the agent therein designated, that process might in that event be served thereafter on the Auditor of the said State of Arkansas, in any action against said company upon any policy or liability issued or contracted during the time said company transacted business in said State of Arkansas, which service so made should have the same effect as if personally served on said company within the State of Arkansas, a copy of which said written stipulation, duly certified, is filed herewith, marked exhibit "A," and made a part of this answer. That the said St. Paul German Insurance Company was not, on the 3d day of June, 1892, engaged in any business in this State, and has not been since the writ in this case against this defendant, the Union Guaranty & Trust Company, was served on the president of this company at Little Rock, in Pulaski county, Arkansas, and no service was ever made either upon Samuel B. Adams, or the Auditor of this State, as agent of said St. Paul German Insurance Company, in Sebastian county, Arkansas, or elsewhere, nor has any service ever been made upon any officer of said St. Paul German Insurance Company anywhere. Nor has the said St. Paul German Insurance Company pleaded or entered its appearance to this suit. And for an answer to the merits of both counts or paragraphs of plaintiff's complaint, this defendant says:

2. That, in pursuance of the act of the general assembly of the State of Arkansas, entitled "An act requiring insurance companies to execute a bond before doing business in this State, and to facilitate the collec-

tion of claims against such companies," approved March
6th, 1891, and not otherwise, or for any other object or
purpose, it entered into bond unto the State of Arkan-
sas, in the sum of $20,000, as surety for the said St. Paul
German Insurance Company, conditioned that the said
insurance company should promptly pay all claims aris-
ing or accruing to any person or persons during the
period of one year ending June 4, 1892, whenever the
same should become due, a copy of which said bond is
attached to plaintiff's complaint, marked exhibit "A."
That this defendant alleges that while the policy of in-
surance sued on herein was written in the State of Ark-
ansas, the plaintiff was not then and is not now a resi-
dent or citizen of the State of Arkansas, and it was
written to cover loss on property not situated or being
in the State of Arkansas, either at the time of the issu-
ance of the policy or at any time thereafter, or at the
time of the alleged loss, and therefore this defendant
denies that it is liable for any loss that may be due from
said insurance company to the plaintiff."

To the second paragraph of this answer a demurrer
in short upon the record was interposed by the plaintiff,
and the same was sustained by the court, and the de-
fendant trust company excepted, and declined to plead
over. And, as the record states, "thereupon came the
aforesaid parties by their respective attorneys, and by
consent a jury was waived, and the cause submitted to
the court sitting as a jury. And the court, after hear-
ing the evidence and argument of counsel, doth find that
Shelby & Boyd were agents of the defendant, St. Paul
German Insurance Company, at the time the service
herein was had, capable of receiving service for said de-
fendant insurance company which would be binding
upon it."

The court, after finding of facts as to the liability
of defendant on the policy of insurance and the bond,

further finds "that the St. Paul German Insurance Company has been duly summoned to answer herein more than ten days before the first day of the term of court, and has wholly failed to appear, answer or demur, and has made default." On said finding of facts the court made the following declarations of law: "(1) That the service of summons on Boyd & Shelby at Fort Smith, Arkansas, was binding on the St. Paul German Insurance Company, and the service of summons herein on L. B. Leigh, the president of the Union Guaranty & Trust Company, at Pulaski county, Arkansas, was also binding upon that company, and that their case is properly brought, and that this court has jurisdiction thereof. (2) That the Union Guaranty & Trust Company, by its bond sued on, is liable for the loss sustained by plaintiff in this action, as surety for the St. Paul German Insurance Company, in the said sum as found due from said last named company."

Judgment was accordingly rendered against both defendants, and the trust company, excepting to the court's rulings, finding and judgment, filed its motion for new trial: (1) Because the court erred in overruling its motion to quash. (2) Because the court erred in sustaining the demurrer to second paragraph of answer. (3) Because the court erred in finding Boyd, or Shelby, or Boyd & Shelby, were agents of the insurance company at the commencement of this suit or afterwards. (4) Because the court erred in finding that the bond covered losses beyond the limits of the State. (5) Because of error in the first declaration of law. (6) Because of error in the second declaration of law. The seventh, eighth and ninth grounds are formal. (10) Because the court was without jurisdiction. (11) Because the court erred in permitting the bond to be read in evidence over its objection.

It appears that the same evidence was used in the trial of the issue made by the first paragraph of the answer as was used in the trial of the motion to quash, with the addition of the bond.

There were two bills of exception—one containing the evidence upon which the motion to quash was determined, and the other containing the evidence upon which the first paragraph of the answer or plea in abatement was tried by the court, and both being substantially the same, as affects this opinion, and being substantially stated herein, and in the said motion to quash and in said answer, there being in fact no material controversy as to the facts considered herein.

*Jno. H. Rogers* and *Jas. F. Read* for appellant, Union Guaranty & Trust Co.

1. The Sebastian circuit court could only acquire jurisdiction of the Union Guaranty & Trust Company, by virtue of a service made in Pulaski county, by first securing service on the insurance company in Sebastian county. Mansf. Dig. secs. 5007, 5011; 14 B. Mon. 647; 4 Met. 327. Service could only be had upon the designated agent, or upon the auditor. Mansf. Dig. secs. 4981–2, as cured by Mansf. Dig. sec. 3834; 10 N. E. 731; Act March 6, 1891, p. 58.

2. A general assignment revokes all agencies. Story, Agency, sec. 462–469. Mechem, Ag. sec. 264. Hence the agency of Adams & Boyle and Boyd & Shelby were revoked. They also renounced their agencies. *Ib.* sec. 402–69–78. Agency is often revoked by implication. *Ib.* secs. 474–7, 481–2.

3. By filing an answer to the merits the plea in abatement and motion to quash were not waived. Pom. Rem. & Rem. Rights, sec. 697–8; Bliss, Code Pl. sec. 345; 32 Ark. 432; 14 N. Y. 465; 21 N. Y. 399; 28 Ind. 327; 28 Ind. 462; 17 Wis. 126; 39 *id.* 651.

4. The bond only covers losses in Arkansas. Acts 1891, p. 282; Acts 1893, p. 161-2; 93 U. S. 301; 15 Johns. 380; 17 Fed. 579; 1 McCrary, 126; 96 U. S. 337; Sutherland, Stat. Const. sec. 241 and footnotes.

*Jos. M. Hill* for appellee.

1. Valid service can be had upon a foreign insurance company, under sec. 4982, Mansf. Dig., by serving *any agent.* The provision of sec. 3834, Acts 1887, p. 43, is cumulative. If Boyd & Shelby then were agents capable of receiving service, the action is well brought. The proof is ample to show the agency of Boyd & Shelby, and the company cannot prevent suit by revoking its agencies. 56 Ark. 539; 7 La. An. 737; 10 N. E. 729; 17 S. W. 35; 33 N. W. 653; 45 Ark. 94.

2. The Union Guaranty & Trust Co. waived service, and submitted to the jurisdiction by filing an answer to the merits. 12 Peters, 300; 141 U. S. 127; 146 *id.* 593; 17 S. W. 35; 47 Ark. 131; 48 *id.* 151. Even where there is no service at all, if the party prosecutes an appeal to this court, he becomes a party to the record, and bound by subsequent proceedings, although his appearance on appeal was merely to object to the want of process. 42 Ark. 268; 31 *id.* 58.

3. The surety is liable. The contract was made in Arkansas, and the policy issued there. Acts 1891, p. 58; Suth. St. Const. sec. 229, 235; 70 Mo. 601; 30 Ark. 69; 44 *id.* 174; 21 Atl. 680; 27 N. E. 577; 140 U. S. 226; 32 Fed. 273; 16 S. E. 132; 3 N. Y. 266; 12 N. Y. 258; 7 Biss. 315, 372; 62 N. H. 622; 1 Wood, Ins. sec. 97, note 2; 14 B. Mon. 29; 1 Fed. 471; 46 *id.* 442.

BUNN, C. J., (after stating the facts). The first contention of the appellant is that the service of summons on the defendant insurance company by Boyd & Shelby as its agents was insufficient to compel its attendance, and that no valid judgment could, therefore,

be rendered against it, and that the judgment rendered herein is void ; and that for that reason the summons served upon the appellant in Pulaski county to appear in the said Sebastian circuit court is also void—in other words, is not such service as is authorized by statute to be binding upon it.

1. Service of process on foreign insurance company.

First, then, as to the service of summons upon the defendant insurance company, the principal in the bond sued on.

At common law the courts of one State have no jurisdiction over the corporations of other States, for the simple reason that there is no way by which service of summons may be made ; for, as stated in Angell & Ames on Corporations (10th ed.), sec. 402 : "It has been thought that as a corporation can sue within a foreign jurisdiction, there is no reason why it should not be liable to be sued without its (own) jurisdiction, in the same manner, and under the same regulations, as domestic corporations. The technical difficulty which is said to stand in the way is, that the process against a corporation must, by the common law, be served on its head or principal officer, within the jurisdiction of the sovereignty where this artificial body exists.

In *Bushel* v. *Commonwealth Insurance Co.*, 15 Serg. & R. 176, it is said : "The process against a corporation, by the common law, must be served on its head or principal officer, within the jurisdiction of the sovereignty where this artificial body exists. If the president of a bank of another State were to come within this State, he would not represent the corporation here ; his functions and his character would not accompany him when he moved beyond the jurisdiction of the government under whose laws he derived his character. That this would be the case where he was in the State on business unconnected with the corporation, there can be no question, but where a corporation locates the presi-

dent or other officer within the State, for the express
purpose of making contracts here, whether process
served on him would not be sufficient is a question which
I shall not undertake to determine, because it does not
necessarily arise.   There is nothing, then, in the nature
of a corporation to exempt it from suit.   The difficulty
arises from there being no person within the limits of
the State on whom you can serve your process."   To
the same effect is *City Fire Ins. Co.* v. *Carrugi*, 41 Ga.
660.   And these cases are samples of cases in those courts
which have gone farthest in seeking, by judicial rule, to
acquire jurisdiction of foreign corporations.   This is
enough to say, to make the point that, for the courts of
a State to acquire jurisdiction of the person of a foreign
corporation, they must look, and look alone, to the stat-
utes of their own State.

In practical application of the rule of common law,
and as aided by statute, the Supreme Court of the Uni-
ted States, in *St. Clair* v. *Cox*, 106 U. S. 350, says : "In
*Pennoyer* v. *Neff* we had occasion to consider at length
the manner in which State courts can acquire jurisdic-
tion to render personal judgments against non-residents
which would be received as evidence in the Federal
courts ; and we held that personal citation (summons)
on the party or his voluntary appearance was, with some
exceptions, essential to the jurisdiction of the court.

"The doctrine of that case applies, in all its force,
to personal judgments of the State courts against foreign
corporations.   The courts rendering them must have ac-
quired jurisdiction over the party by personal service or
voluntary appearance, whether the party be a corpora-
tion or a natural person.   There is only this differ-
ence : a corporation, being an artificial being, can act
only through agents, and only through them can be
reached, and process must, therefore, be served upon
them.   In the State where a corporation is formed it is

not difficult to ascertain who are authorized to represent
and act for it.   Its charter or the statutes of the State
will indicate in whose hands the control and manage-
ment of its affairs are placed.   Directors are readily
found, as also the officers appointed by them to manage
its business.   But the moment the boundary of the State
is passed, the difficulties arise ; it is not so easy to deter-
mine who represents the corporations there, and under
what circumstances service on them will bind it.

"Formerly, it was held that a foreign corporation
could not be sued in an action for the recovery of a per-
sonal demand outside of the State by which it was char-
tered."

And again:  " The State may, therefore, impose,
as a condition upon which a foreign corporation shall be
permitted to do business within her limits, that it shall
stipulate that, in any litigation arising out of its transac-
tions in the State, it will accept as sufficient the service
of process on its agents or persons specially designated ;
and the condition would be eminently fit and just.   And
such condition may be implied as well as expressed."

That was a case from Michigan, where foreign cor-
porations were permitted to do business by statute, and
by the same it was provided that service could be had on
"any officer, member, clerk or agent of such corpora-
tion" within the State, and that this service should op-
erate as personal service.   The court further says:
" The transaction of business by the corporation in the
State, general or special, appearing, a certificate of
service by the proper officer on a person who is its agent
there would, in our opinion, be sufficient *prima facie*
evidence that the agent represented the company in the
business.   It would then be open, when the record is
offered as evidence in another State, to show that the
agent stood in no representative character to the com-
pany, that his duties were limited to those of a subordi-

nate employee, or to a particular transaction, or that his agency had ceased when the matter in suit arose. In the record, a copy of which was offered as evidence in this case, there is nothing to show, so far as we can see, that the Winthrop Mining Company was engaged in business in the State when service was made on Colwell. The return of the officer, on which alone reliance was placed to sustain the jurisdiction of the State court, gave no information on the subject. It did not, therefore, appear, even *prima facie*, that Colwell stood in any such representative character to the company as would justify the service of a copy of the writ on him. The certificate of the sheriff, in the absence of this fact in the record, was insufficient to give the court jurisdiction to render a personal judgment against the foreign corporation."

It is plainly to be seen that the difficulty in that case grew out of the imperfection of the Michigan statute, in this, that it designated too many classes of agents and representatives of the company, and too many individuals of some of the classes, upon whom service might be had in order to bind the company. In fact, the statute, in effect, designated any and all officers and agents of the company in the State. That necessarily left it so that a very indefinite sheriff's return might be made the indisputable foundation of a judgment by default. The court held, however, that while service on one named as "agent" would authorize judgment, yet that it must first be made to appear, as a jurisdictional fact under that law, that the company was doing business in the State at the time of the service, or the service would be void.

None of the difficulties confronting the court in that case could possibly confront a court under the laws of Arkansas, for here we have only one agent named upon whom process may be served to bind the company, and,

in case of his absence, the Auditor stands in his place, and this agency is practically irrevocable, and it does not make any difference whether the company is doing business or not in the State at the time of the issuance and service of the process. The record—the sheriff's return—need only show definitely the summons to have been served on the designated agent, and that he in fact is such designated agent, or in his absence that it has been served on the Auditor of the State. Nothing more may be said in the latter case as to official description, as there is but one Auditor of State.

This brings us to the question of whether or not service upon this designated agent is the only and exclusively legal service to be had in order to bind a foreign insurance company. A majority of the court are of the opinion, from what has been said, and from the language of the constitution and laws of this State pertaining to the subject, that such is the only legitimate mode of obtaining service upon a foreign insurance company, so as to authorize a valid personal judgment against it; and this opinion, we think, is in just accord with the true sense and meaning of the opinion of the United States Supreme Court from which we have so largely quoted. It is also in harmony with the true sense and meaning of the case of *Ehrman* v. *Teutonia Ins. Co.* 1 McCrary, 123.

As early as 1873, what is known as an "insurance bureau" was established by the legislature of this State, by and through which the whole subject of insurance, domestic and foreign, was regulated and managed. Among the provisions of that statute, which forms a separate chapter in our digest, is one imposing duties upon foreign corporations upon which they would be permitted to do business in this State at all. Among these duties are that of appointing the agent referred to and agreeing that service upon him or the Auditor shall be held to be personal service upon the company. There

was already in existence, as part of the code of pleading and practice, a provision whereby service was to be had upon foreign corporations generally, but the provision in the insurance bureau, under a well known rule of construction, was the one, and the only one, applicable to foreign insurance corporations. The present constitution provides, in a general way, how foreign corporations may be permitted to do business in the State. See sec. 11, art. 12. The bureau act of 1873 was re-enacted in 1875 after the adoption of the present constitution, and the only change made was in this: instead of the separate bureau being managed by an insurance commissioner, the Auditor was substituted as head of the bureau, and so the law stands to this day.

Whatever the courts may choose to say about the matter, the legislative department of the State government has treated foreign insurance corporations of so much importance, and so independent of domestic control, that it has required, as a condition of their being permitted to do business in the State at all, that they (each and every one of them) shall agree that service upon a designated agent shall be personal service upon the company. It is somewhat a matter of doubt, as we have seen, whether, without this agreement, a valid personal judgment could be rendered against one of them at all. At all events, not unless the very act of doing business in the State through an agent may be judicially construed to mean an acceptance of the terms imposed by statute so as to become binding, as was held by Judge Caldwell in the case above cited from 1 McCrary. See, however, *Rothrock* v. *Dwelling-House Ins. Co.* 23 L. R. A. 863.

The bureau act provided for the protection of policy holders in case of inability or unwillingness of foreign insurance companies to redeem their pledges, and since then bond and security have been required as part of the

conditions imposed (and the sureties on these bonds must be largely citizens of the State), as in the present instance.    These bondsmen, as well as the foreign corporations, have a vital interest in the law being confined in its administration to the exact terms and provisions of the bureau act—the law under and in view of which they entered into their obligations.    All of them have a right to demand, when they (principals and sureties) are sued on the bonds, that no obscure, incompetent or careless agent shall represent the corporation in this particular matter, but the chosen agent, the confidential representative, shall be notified of the institution of all suits, and they all, by the State's sacred contract and treaty with them, have the right to enjoy the benefit of this agent's promptness and efficiency.    We think that the law, when construed in the light of surrounding circumstances, the objects to be attained, and the great interest to be subserved, can mean nothing else than that the service upon the agreed and designated agent is the only service that can authorize a judgment in such cases.

2. Plea in abatement not waived by plea in bar.    The next question to be considered is, whether or not, having answered as it did, the trust company entered its appearance, and is bound by the judgment, or, in other words, was the answer a waiver of the service of summons upon it?

In the first place, a liberal construction of sections 5008 and 5009, Mansfield's Digest, might determine this question in favor of the defendant, but, since there are decisions that might be considered as militating against this summary disposition of the question, we will consider it without reference to those particular sections of the statute.    Under the old practice, a plea in abatement had to be disposed of before presenting a plea in bar. Hence, after such a plea overruled, when the defendant interposed a plea in bar, he was considered as having waived defects of service, if that were his plea in abate-

ment, and entered his appearance. Under the new or the code practice, the rule is different, for the defendant is required to make all his defenses in the one paper denominated his answer. In *Grider* v. *Apperson*, 32 Ark. 332, it is said: "Under our code practice, pleas in abatement, as such, have been abolished, and matter in abatement may be interposed in connection with pleas in bar, under a most liberal provision for amendments, intended to prevent delay, and to bring the parties to issue upon the merits of the case."

In the case of *Erb* v. *Perkins*, 32 Ark. 428, the defendant filed his answer containing two paragraphs as defenses, the first in the nature of a plea in abatement as to the insufficiency of notice, and the second a plea in bar, as in the case now under consideration. It was there objected by the plaintiff that, by presenting the plea in bar, the defendant had waived his defense contained in the first paragraph, or plea in abatement. On appeal, however, this court said: "Appellant submits, however, that the defense set up by the first paragraph of the answer, being a matter in abatement, was waived by the second paragraph, which was in bar. By the common law system of pleading, matter in abatement was waived by pleading in bar, but such is not the rule under our code system of pleading, but, on the contrary, in the same answer matter in abatement and matter in bar of the action may be pleaded in separate paragraphs."

If the defendant is to enjoy the benefit of his plea in abatement, notwithstanding his simultaneous plea in bar, even when he makes no special reservation of his right to do so, as in the case of *Erb* v. *Perkins*, just cited, how much clearer is the right when he has asserted and reserved it at every step, even when driven by the force of circumstances to do that which the plaintiff was

seeking all along to compel him to do—answer without being legally brought into court. We think his plea in abatement—the first paragraph of his answer—was good. and should have been sustained, and that the cause should have been dismissed without prejudice for want of proper service upon either of the defendants, and it is now so ordered.

WOOD, J., dissenting. I do not concur in that part of the opinion which holds that service upon the Auditor or designated agent is the only service which can be had upon foreign insurance corporations doing business in this State. Section 4982, Mansf. Dig., provides : "When the defendant is a foreign corporation, having an agent in this State, the service may be upon such agent." Section 3834, Mansf. Dig.—of the Insurance Bureau Act—does not expressly repeal the above section. Certainly there is no repugnance, and it cannot therefore be said that the above section (4982) is repealed by implication. The act of March 2, 1887, p. 43, does not repeal it, but only enlarges the provisions, making service good "upon an agent of said company or companies in any county in the State, or service upon the Auditor of State, as provided by law." Observe that this act does not say "upon the Auditor or party designated by him, or the agent specified by said company to receive service of process." The language is "an agent of said company or companies." It is plain that sec. 3834 of Mansf. Dig. and the act of March 2, 1887, *supra*, are not in conflict with section 4982 of Mansf. Dig. They should be treated as cumulative, rather than as repugnant, methods of service. The construction which the majority place upon sec. 3834, Mansf. Dig., it seems to me, nullifies both sec. 4982, Mansf. Dig.—of the pleading and practice act—and also the act of March 2, 1887, so far as foreign insurance companies are concerned. I do not think the

insurance bureau statute was intended to prescribe the only method of service, and, unless it was, there being no irreconcilable conflict, according to well recognized canons of construction, all these statutes should be permittted to the stand. *Chamberlain* v. *State*, 50 Ark. 132. I see nothing in our constitution, or the several statutes referred to, to warrant the court's construction.

As to whether the service in this case was sufficient, and the other questions raised, it is now unnecessary to express an opinion.

Riddick, J., concurred in the dissenting opinion.