HAMPTON v. HICKEY.

Opinion delivered December 7, 1908.

1.  STATUTES—REPEAL—GENERAL AND SPECIAL ACTS.—While the general rule is that a general act does not repeal a prior special act, the question is always one of intention, and the purpose to abrogate the particular enactment by a later general act is sufficiently manifested when the provisions of both can not stand together. (Page 327.)

2.  SAME—REPEAL BY ENLARGING ACT.—A later statute which extends and enlarges a right before existing implied.y repeals the law by which the former was created or given. (Page 327.)

3.  SAME—REPEAL BY EXCLUSIVE ACT.—When a later statute is exclusive, that is, where it covers the whole subject-matter to which it relates, it will be held to repeal by implication all prior statutes on that subject, whether they are general or special. (Page 328.)

4.  SAME.—The special act of April 26, 1905, authorizing the special school district of Fordyce to borrow money to build a school building, to mortgage the real estate of the district, and to issue bonds, notes or other evidences of indebtedness not to exceed $15,000, was impliedly repealed by the general act of May 6, 1905, authorizing "all special school districts in Arkansas" to borrow money, without restriction as to amount. (Page 328.)

5.  APPEAL AND ERROR—TEMPORARY INJUNCTION.—Where application is made to a court of equity for a writ of injunction, which is denied, and an appeal is prayed, the court may make an order to protect the rights of the appellant for a reasonable time until he can apply to the Supreme Court or one of the judges thereof for a temporary injunction in aid of the appellate jurisdiction of the court; but, after the Supreme Court acquires jurisdiction, its authority is exclusive. (Page 329.)

Appeal from Dallas Chancery Court; *Emon O. Mahoney,* Chancellor; affirmed.

STATEMENT BY THE COURT.

The complaint alleges that G. M. Hampton, the plaintiff, is a citizen and taxpayer of the city of Fordyce, which was organized into a special school district under the laws of the State of Arkansas providing for the organization of special school districts co-extensive with the territory of any incorporated city or town; that the Legislature, by an act approved April 26, 1905, authorized said special school district to borrow $15,000, but that it has undertaken to borrow $25,000, and, unless restrained, will issue bonds for that sum, secured by a mortgage upon the property of the district, and such bonds may get into the hands of an innocent holder. He therefore prays for an injunction.

The defendants answered, admitting the allegations of the bill and alleging that on April 2, 1908, all members of the board being present, it was found that it needed money to erect new school buildings, and that buildings adequate to the needs of the district would cost $25,000, and the board thereupon resolved to issue bonds for that amount, secured by a mortgage on the real property of the district and a pledge of its revenues, and adopted resolutions providing the form of the bonds, the rate of interest thereon, and the form of the mortgage, and directed the defendants to execute it. They deny that the school district is authorized to borrow only $15,000, but say that at the time the special act described in the complaint was passed the school board could borrow money and mortgage the property of the district only after the submission of the question to the electors of the district at an annual school election, and the object of the special act was to enable the school directors of this district to issue bonds and execute a mortgage without such election; but after said special act was passed the Legislature passed an act applicable to all special school districts, authorizing the board of directors of such special school districts to borrow money and mortgage the real property of the district, without submitting the question to the electors and leaving the amount to be borrowed to the discretion of the board.

Evidence was adduced to show that the board of school

directors passed the resolution referred to in the answer, and that it will require $25,000 to construct the buildings needed in the district. That two buildings are needed, one for white and the other for colored children.

The chancellor found that the special school district of Fordyce had the power to borrow the $25,000 under the general act of May 6, 1905, and that the special act was repealed by it.

Therefore a decree was entered denying the prayer for injunction and dismissing the complaint for want of equity.

Plaintiff has duly prosecuted an appeal to this court.

*T. B. Morton,* for appellant.

A general act does not repeal a special act upon the same subject unless there is an invincible repugnancy between them. 50 Ark. 132; 51 Ark. 567; 52 Ark. 449; 53 Ark. 339; *Id.* 417; 54 Ark. 237; 72 Ark. 125;.80 Ark. 413; 81 Ark. 464; 63 Ark. 403. Here there is no inconsistency between the limitation as to the amount the special school district could borrow conferred by the special act and the general authority to borrow given to any school district by the general act. Repeals by implication are not favored. They will be declared only where there is an irreconcilable conflict between the two statutes. 28 Ark. 325; 29 Ark. 237; 34 Ark. 499; 48 Ark. 159; 56 Ark. 47; 41 Ark. 149; 45 Ark. 92.

*Rose, Hemingway, Cantrell & Loughborough,* for appellees.

The rule that ordinarily a general act does not repeal a prior particular act is not disputed; but that principle has no application here. The general act applies to *all* special school districts. Acts 1905, p. 652. Its manifest object was to place all special school districts in the State on an equal, uniform basis, and to permit all of them to borrow money and mortgage their property upon appropriate resolutions by their boards of directors. The general act only extends and widens the power of the special school district over the limited power conferred by the special act, and is applicable to any and all special school districts. The general act repeals the special act in this case by implication. 19 Ohio St. 320; 152 Pa. St. 244; 25 Atl. 556; 166 Pa. St. 152; 30 Atl. 831; 114 Ill. 138; 44 Mo. 159; 75 Minn. 456; 106 Ky. 628; 167 Pa. St. 628; Endlich, Int. Stat. § § 230, 231.

HART, J., (after stating the facts.)   On the 26th day of April, 1905, the Legislature passed an act authorizing the special school district of Fordyce, in Dallas County, Arkansas, to borrow money to build and equip a suitable school building for said district, to mortgage any part or all of the real property of said district, and to issue bonds, notes or other evidences of indebtedness, not to exceed the sum of $15,000, under such conditions as to time and manner of payments as the school directors of said district may prescribe.   Acts 1905, p. 508.

On the 6th day of May, 1905, at the same session the Legislature passed an act which provided "that all special school districts in Arkansas are hereby authorized and impowered, for the purpose of raising funds for the erection and equipment of necessary school buildings, to borrow money and to mortgage the real property of the district as security therefor, under such conditions and regulations as to time, amount, rate of interest and manner of payment as the board of school directors of said school district shall prescribe, and to renew and extend from time to time any evidences of indebtedness or mortgages, or both, issued or made by virtue hereof."

The sole issue raised by the appeal is whether the first is repealed by the passage of the second act.   The general act does not expressly repeal the special act.   The general rule on the subject of repeal by implication is that a general act was not intended to repeal a prior special act.   *St. Louis S. W. Ry. Co.* v. *Grayson,* 72 Ark. 119; *Chamberlain* v. *State,* 50 Ark. 132.

But, as stated by the author in Lewis' Sutherland, Statutory Construction, vol. 1, § 276:   "There is no rule of law which prohibits the repeal of a special act by a general one, nor is there any principle forbidding such repeal without the use of words declarative of that intent.   The question is always one of intention, and the purpose to abrogate the particular enactment by a later general statute is sufficiently manifested when the provisions of both can not stand together."

In his illustrations many of the cases relied upon by appellees are cited and reviewed as sustaining the text.

The same author at § 254 says that a new act which extends and enlarges a right before existing impliedly repeals the law by which the former was created or given.

In *State* v. *West Duluth Land Co.,* 75 Minn. 467, it appeared that St. Louis County was prohibited by a special act passed in 1877 to issue bonds, except to refund its existing indebtedness. A general act was passed in 1895 which authorized any county in the State to issue bonds for the purpose of building roads and bridges. It was held that the general enabling act removed the limitations in the special act. In discussing the question the court said: "This law, which expressly authorized any county in the State (making no exceptions) to issue bonds to build roads and bridges, was clearly hostile to the special law, previously enacted, which prohibited the further issuance of any bonds by the county therein named. These laws can not be harmonized, and, as a consequence, the special law stands repealed."

This rule has been recognized and applied in the following cases: *Dutton* v. *Aurora,* 114 Ill. 138; *State* v. *Pearcy,* 44 Mo. 159; *Hartford* v. *Hartford Theological Seminary,* 66 Conn. 485; *Acquackanonk Water Co.* v. *Passaic,* 65 N. J. L. 476; *Bruce* v. *Pittsburg,* 166 Pa. St. 152; *Cooper* v. *Wait,* 106 Ky. 628; *Garrison* v. *Richards,* 107 S. W. (Tex.), 861; *Mayor of Jersey City* v. *Jersey City & Bergen Rd. Co.,* 20 N. J. E. 360; *Commissioners of Knox Co.* v. *McComb,* 19 Ohio St. 320.

So, too, "it is a familiar rule that when a later statute is exclusive, that is, where it covers the whole subject-matter to which it relates, it will be held to repeal by implication all prior statutes on that matter, whether they are general or special." *United States* v. *Claflin,* 97 U. S. 546. This rule has been recently applied by this court in the case of *Western Union Telegraph Co.* v. *State,* 82 Ark. 302.

Applying these canons of construction to the facts in the present case, we are of the opinion that the general act repeals by implication the special act. The general statute by its title is "An act to permit any special school district in the State of Arkansas to borrow money for building purposes, etc."

Section 1 provides "that all special school districts in Arkansas are hereby authorized and impowered, etc."

The words used, 'any and all,' evidence the intention of the Legislature to create a uniform system to operate on all special school districts alike. At former sessions of the Legislature special acts had been passed enabling the special school district

named in the act to borrow money to build a school house. A great number of these special acts were introduced and some passed at the 1905 session. Then the general act was passed. It is broader in its scope than any of the special acts. It covers the whole subject-matter embraced by them, and the objects designed to be effected are the same. Then, too, the two statutes in question are inconsistent, and can not both stand. The special act provides that, "for the purpose of borrowing money to build · and equip a suitable school building for said district," the board of directors are impowered to issue evidences of indebtedness, "not to exceed the sum of $15,000." Under this act, if the building was destroyed, or if the needs of the district required a building that cost more than $15,000, the board would be powerless to act. In the general act, no restrictions as to amounts are imposed by the terms of the act, and it thus enlarges the power given by the special act. Hence the two acts can not be harmonized, and are repugnant to each other.

In this case at the same term after the decree denying the injunction prayed for and dismissing the complaint for want of equity had been entered, the court added the following order: "And, it appearing that the case is one involving public interest and that the cause will be advanced by the Supreme Court, it is therefore ordered that the defendants be restrained from executing the bonds and mortgages described in the complaint herein, or any similar bonds and mortgage, until this cause has been heard in the Supreme Court. . The matters involved in this litigation are to remain *in statu quo* until the hearing in the Supreme Court."

Courts of equity have the power to make orders to protect the rights of parties for a reasonable time after the determination of the suit in that court. But after this court acquires jurisdiction it has full power over the whole cause with regard to all things appearing on record. The language above used is that of Mr. Justice EAKIN as appears from the opinion in the case of *Payne* v. *McCabe,* 37 Ark. 318.

The orders of the chancellor in such cases are determinable, and should not be made to extend beyond a reasonable time in which the party desiring to preserve the *status quo* of the parties or of the subject-matter of the litigation may apply to this court

or one of the judges thereof for a temporary injunction in aid of the appellate jurisdiction of the court. See Kirby's Digest, § 1186. This is the proper rule of practice in such cases, as approved by the court in the case of *Little Rock Railway & Electric Co.* v. *North Little Rock,* 76 Ark. 48, where the precise question was involved in determining the rights of the parties under a temporary injunction granted by the Chief Justice during the pendency of an appeal in the case of *Little Rock* v. *North Little Rock,* 72 Ark. 195.

Therefore it is ordered that the temporary injunction be dissolved, and that the decree of the chancellor be affirmed.

HILL, C. J., disqualified and not participating.