John L. Singleton, Appellant, v. National Land Company, Appellee.

**JUDGMENT:** Parties Concluded—Withdrawal Without Prejudice.
1   A decree which quiets title against *all* defendants, yet later distinctly specifies those against whom title is quieted, is not conclusive on a defendant not specifically mentioned in the decree, especially when the record shows a dismissal, without prejudice, at a later date, and prior to any joinder of issue thereon, of the answer and cross-petition of said latter defendant.

**HOMESTEAD:** Sales by Guardian—Validity.   A guardian's sale
2   and deed of a homestead belonging to an insane wife, for debts neither antedating the acquisition and occupancy of the homestead nor created by the husband or wife, are a nullity.   Especially is this true when the husband is not made a party to the proceedings leading up to and culminating in the sale and deed, and does not join in said deed with said guardian.   (Secs. 2974, 2976, 3166, Code, 1897.)

**HOMESTEAD:** Sales by Guardian—Husband Joining in Deed.   Con-
3   ceding, *arguendo*, that a guardian may, under Section 3225, Code, 1897, validly sell the homestead, to which an insane wife has title, yet such deed is of no validity unless the husband joins therein.   (Sec. 2974, Code, 1897.)

**GUARDIAN AND WARD:** Validity—Limitation of Actions.   The
4   five-year limitation for questioning the validity of a guardian's sale and deed does not apply to a deed which is absolutely void.

**HOMESTEAD:** Abandonment by Husband.   The act of a husband
5   in neither residing in nor giving any attention to a homestead for four years after he knew that the title, standing in the name of the wife, had been quieted against her, works a complete abandonment of the homestead by him, even though the decree quieting title might have been defeated by proper contest.

*Appeal from Lee District Court.*—HENRY BANK, JR., Judge.

APRIL 1, 1918.

REHEARING DENIED JUNE 24, 1918.

ACTION to recover possession of certain lots alleged to constitute a homestead, and recover rents and profits accrued. On hearing, the petition was dismissed. The plaintiff appeals.—*Affirmed.*

*Bernard A. Dolan,* for appellant.

*H. I. Sawyer, J. O. Boyd,* and *Craig & Sprowls,* for appellee.

LADD, J.—Azubah Fassett acquired, under the will of Rosilla Height, the front 50 feet of Lots 7, 8, and 9, in Block 6 in the city of Keokuk. Thereafter, on September 14, 1896, she married the plaintiff, John L. Singleton, and within a year a son, Paul T., was born to them. In 1899, Mrs. Singleton was adjudged insane, and committed to the hospital for the insane at Mount Pleasant, where she has been ever since. Up to this time, they had occupied the described premises as their homestead, and plaintiff continued such occupancy, with his son, for about a year and a half thereafter. In 1902, he made an oral agreement with Mary Getz, by the terms of which she was to care for the son, collect rent on the said premises, which was then $13 per month, and, out of such rent, to receive $8 per month as compensation for the care of the child. Since then, Singleton has not occupied the premises, has seen little of his son, and has contributed nothing towards his support. On May 20, 1905, Mary Getz, on her own application, was duly appointed guardian of Mrs. Singleton. Subsequently, and on May 22, 1908, as such guardian, she applied for an order authorizing her to sell the premises. The ward was

1. JUDGMENT: parties concluded: withdrawal without prejudice.

duly notified, and a guardian ad litem was appointed, who filed answer. No notice was served on Singleton. The sale was ordered, the premises duly appraised, and the sale negotiated to Alice M. Walker; and, on report of the same, with the conveyance thereof to her, approved by the court. No debts antedating occupancy of the premises as a homestead of either Mrs. Singleton or her husband existed, nor had any of those for which the sale was made been created by her or her husband. After the execution of the guardian's deed, January 27, 1909, grantee therein began suit to quiet title to the premises, naming several parties as defendants. Mrs. Singleton was served with original notice in the manner required by law, and a guardian ad litem appointed. Said guardian filed answer, as did also Mary Getz, as guardian. The plaintiff herein, on March 17, 1909, filed an answer and cross-petition. This was afterwards withdrawn, and a decree was entered, quieting title in Mrs. Walker.

In this suit, John L. Singleton, with whom Mrs. Singleton joins, by way of petition of intervention filed by him as her present guardian (Mary Getz having been discharged as such), seeks to have the conveyance from Mary Getz, as guardian, set aside and cancelled, as null and void, and, notwithstanding the decree quieting title, that he be put in possession, and recover the rents accruing during the five years preceding the filing of his petition. The defendant relies on the judgments mentioned.

I. The contention that plaintiff was estopped by the decree quieting title may first be disposed of. In the caption of the petition filed by Alice M. Walker, January 27, 1914, praying that title be quieted in her, the name "John Singleton" appears, as one of the defendants. On March 17th, following, he filed an answer and cross-petition, raising all questions now involved. A decree was entered on the 26th

of the same month, with Singleton's name omitted from the caption, in words following:

"Now on this day, this cause coming on for hearing, the plaintiff appearing by John E. Craig, her attorney, and the defendant, Azubah Singleton, appearing by Rice H. Bell, the duly appointed guardian ad litem of said Azubah Singleton, insane, and having filed her answer, and Mary Getz, guardian of Azubah Singleton, also appearing, by John E. Craig, her attorney, and the matter having been submitted to the court upon the pleadings in said cause and the admissions of said guardian, and the court having heard the evidence and being fully advised in the premises, finds that the allegations of the plaintiff's petition are true, and that the said guardian, Mary Getz, did, on the 7th day of November, 1908, execute a guardian's deed to the said property on the said date, and that the said deed was duly approved by the court, and recorded in the records of Lee County, Iowa, of Keokuk, in Book 12, Page 423.    [Here follows identification of property and finding as to ownership.]   It is therefore ordered, adjudged, and decreed that the plaintiff, Alice M. Walker, is the absolute and unqualified owner of the frt. 50 ft. of Lots 7, 8, and 9, in Block 6, city of Keokuk, and her title and the estate in same is hereby established against the adverse claim of all the defendants to this suit, and that the claims of Azubah Singleton, insane, Zuba Singleton, Mary Getz, Guardian of Azubah Singleton, insane, defendants, are both jointly and severally barred and forever stopped from having or claiming any right or title adverse to the plaintiff in or to said property. And that plaintiff have and recover of the defendants the costs," etc.

In the caption of the original draft of the decree, duly signed by the trial judge, lines were drawn through the name John L. Singleton, appearing as one of the defendants.   On the 30th day of March, four days later, Mrs.

Walker filed a demurrer to the answer of Singleton, on the ground that he was without capacity (interest) to sue, inasmuch as title was in his wife. This entry appears, as of September 22, 1909:

"Now on this day, this cause coming on for hearing, the plaintiff appeared by John E. Craig, her attorney, and the defendant John Singleton appearing by John P. Homish, his attorney, and the said attorney withdraws his answer, and dismisses the cross-petition filed by said John Singleton, without prejudice."

It will be noted that the appearances for the parties other than Singleton are recited in the decree, as are also their pleadings, but his answer and cross-petition are not alluded to; and, though it is recited that plaintiff's title in the estate is established adverse to the claims of all the defendants to the suit, this is followed by the words "and that the claims of Azubah Singleton, insane, Zuba Singleton, Mary Getz, guardian of Azubah Singleton, insane, defendants, are both jointly and severally barred and forever estopped from having or claiming any right or title adverse to the plaintiff in or to said property." In other words, though the recital is that the decree is against "all defendants," this is immediately followed by an enumeration of the particular defendants intended. That the decree was leveled against such defendants only, further appears from the circumstance that Singleton's name was erased from the caption, and, though all other defendants are named therein, his name does not appear. Add to this that issue had not been joined on his answer and cross-petition, and the record is all but conclusive that he was not included in the decree entered. This was the conclusion of the plaintiff, else she would not thereafter have lodged a demurrer against the answer and cross-petition. When the decree is read in connection with the record of the cause, there remains little or no doubt as to the construction which should be put up-

on it.   We are satisfied that the decree was not intended to
and did not quiet the title against the plaintiff herein, John
L. Singleton.   See *Banning v. Sabin,* 41 Minn. 477 (43 N.
W. 329).

II. Nor do we regard the judgment of the court, or-
dering the guardian, Mary Getz, as such, to sell the prop-
erty, or her deed to Mrs. Walker, as of any validity.   Sec-
tion 2974 of the Code declares that:

2. HOMESTEAD:              "No conveyance or incumbrance of or
sales by
guardian:       contract to convey or incumber the home-
validity.
stead, if the owner is married, is valid, un-
less the husband and wife join in the execution of the same
joint instrument, whether the homestead is exclusively the
subject of the contract or not, but such contracts may be
enforced as to real estate other than the homestead at the
option of the purchaser or incumbrancer."

Section 2976 of the Code provides that:

"The homestead may be sold on execution for debts
contracted prior to its acquisition, but in such case it shall
not be sold except to supply any deficiency remaining after
exhausting the other property of the debtor liable to execu-
tion.   It may also be sold for debts created by written con-
tract, executed by the persons having the power to convey,
and expressly stipulating that it is liable therefor, but
then only for a deficiency remaining after exhausting all
other property pledged by the same contract for the pay-
ment of the debt."

"Section 3166.   Neither husband nor wife can remove
the other nor the children from the homestead without the
consent of the other, and if the husband abandons the wife
she is entitled to the custody of the minor children, unless
the district court, upon application for that purpose, shall
otherwise direct."

Neither the wife nor the husband can, by any separate
act, affect the homestead rights of the other, and thereby

change the homestead character of the property. When the right of homestead has once attached to the property, it can be relinquished or divested only by a joint convey-ance, or by the abandonment by both husband and wife. *Lunt v. Neeley,* 67 Iowa 97. Mrs. Singleton, having be-come insane, could not join in a deed. *Alexander v. Ven-num,* 61 Iowa 160. Nor was she able to consent to any-thing. It was not of her volition that she left the home-stead for the hospital for the insane, and it cannot be said that she ever consented to her removal from the homestead, under Section 3166, quoted above. Nor is anyone else au-thorized to speak for her.

In *Ratcliff v. Davis,* 64 Iowa 467, the guardian of an insane widow, alleging that she was indebted to the county for the expense of her care in the hospital for the insane, sought to have her share in 160 acres of land, left by her husband, set apart, so as not to include the homestead, and with reference thereto, the court said:

"It is claimed by her guardian that, because she is incapable of making her wishes known, his preference shall be substituted for hers, and that he can waive the statutory provisions. We do not think he has any power to do so, because, as it appears to us, the right is a personal one, and, if not exercised for any reason, even though it. be her incapacity to do so, no other person can act in that behalf in her stead."

Mrs. Singleton has never, by her own volition, yielded her interest in and claim to the property as her homestead. Her. right is guarded by the law against alienation through any act of the husband, and may not be wrested from her otherwise than through some voluntary act on her part. Realty is endowed with the homestead character in the in-terest and for the benefit of the family; and, so long as it retains that character, it is not perceived on what theory either husband or wife may be denied its enjoyment, so

long as such character is retained. Thus it is utterly impossible for either husband or wife, by absenting himself, to divest the homestead character of the premises, in the absence of some act on the part of the other inconsistent with the retention of the property as a homestead. In *Panton v. Manley*, 4 Ill. App. 210, doubt was expressed whether a husband could abandon the homestead, as against the wife. It was said in some early Kansas cases that "nothing that he alone can do or suffer to be done can cast the slightest cloud upon the title of the homestead." *Morris v. Ward*, 5 Kan. 239, 241. See, also, *Coughlin v. Coughlin*, 26 Kan. 116. And in *Withers v. Love*, 72 Kan. 140 (3 L. R. A. [N. S.] 514), the court concluded that:

"The acts which it is claimed amount to equitable estoppel were those of the husband alone. We therefore hold that nothing he did or suffered to be done while his wife was alive cast any cloud upon the title to the homestead, or could estop either her or him from claiming this land as the homestead during her lifetime."

If the homestead may not, as such, be lost save through a joint alienation by deed, in accordance with Section 2974, and neither the husband nor wife may be forced therefrom, in violation of Section 3166, and it cannot be effectually abandoned by either husband or wife unless the other also abandons the same, it necessarily follows that, pending the insanity of either, the premises may not lose their character as a homestead; for she, the insane spouse, is without capacity to join in a conveyance of the homestead, or to assent to removal therefrom. Whatever the sane spouse may do, it continues to be the homestead of the family. The husband and wife are entitled to but one homestead, and the sane spouse may not acquire another while that continues. While the property continues the homestead, then, the insane spouse will not be estopped from asserting his right thereto, as such, by any act or conduct on the part of

the sane spouse; nor are we able to perceive on what theory the latter may estop himself from asserting his right to the premises as a homestead, at any time during the life of the insane spouse. The sane spouse may not alienate or incumber it, or subject it to any charge; and, as it is set apart by the law for the benefit of the family; he may return and resume his residence there at any time so long as its homestead character exists. In other words, the homestead character of property may not be lost save by the concurrence in some manner of husband and wife; and as, without this, it continues for the benefit of both, one may not, by his conduct, estop the other from asserting his right thereto, nor even estop himself from asserting his right thereto and enjoyment thereof while it continues a homestead. This was the view taken in *Withers v. Love,* supra, where the court remarked that:

"It is difficult to see how effect can be given to the constitutional provision requiring the joint consent of husband and wife, and at the same time hold that; while the wife is insane, the ' husband can either separately convey, or by acts or conduct estop the wife from her right to claim, the homestead, or estop himself from claiming it in his own right while she is living. The acts of estoppel must be such as will estop both. (*Law v. Butler,* 44 Minn. 482, 47 N. W. 53, 9 L. R. A. 856)."

As bearing hereon, see *Weatherington v. Smith,* 77 Neb. 363 (13 L. R. A. [N. S.] 430, and cases cited in note); *Nichols v. Shearon,* 49 Ark. 75 (4 S. W. 167).

III. The interest of Singleton in the premises in controversy, and his right thereto as his homestead, still subsisted when the application for authority to sell was made

3. HOMESTEAD: sales by guardian: husband joining in deed.

by Mary Getz, as guardian; but no notice was served on him. His right in the premises was higher in character than his distributive share, being more in the nature of

a vested right, and was such as clothed him with the right to redeem the property at tax sale (*Adams v. Beale,* 19 Iowa 61); entitled him to notice of foreclosure of a prenuptial mortgage, if such there had been (*Chase v. Abbott,* 20 Iowa 154); and he might have maintained an action for possession, had his wife yielded same on contract of sale in which he had not joined (*Boling v. Clark,* 83 Iowa 481). His right to the homestead was one he was entitled to protect, even by negotiating for a sheriff's certificate of sale (*Byers v. Johnson,* 89 Iowa 278), and such right has been held to be within the protection of Section 51 of the Code. It has repeatedly been declared to be permanent, fixed, and substantial, and more nearly resembles a life estate than any other, differing therefrom in the manner of acquirement and alienation, and possessing some of the characteristics of a joint tenancy. *Sayers v. Childers,* 112 Iowa 677. Surely, his right in the homestead was such as that he must have been given notice and afforded an opportunity to be heard, before being deprived thereof. See *Millin v. White,* 134 Iowa 681. Nor is there anything in Section 3225 of the Code or elsewhere, authorizing the conveyance of the homestead otherwise than by the husband's joining in the same instrument; and, even though the guardian of the wife may procure an order authorizing him to sell the insane wife's property, in pursuance of Section 3225, this merely empowers such guardian to join the husband in the execution of the same joint instrument, in accordance with Section 2974 of the Code. No notice was served on Singleton, nor did he join in the execution of the deed to Mrs. Walker; and we entertain no doubt in reaching the conclusion that the conveyance was of no validity, and that the grantee therein acquired no title. *Way v. Scott.* 118 Iowa 197. See *Flege v. Garvey,* 47 Cal. 371.

IV. The deed being void, the statute saying that no person may question the validity of guardian's sale after five

years is not applicable. *Rankin v. Miller*, 43 Iowa 11.

V. Had a proper defense been inter-

**4. GUARDIAN AND WARD: validity: limitation of actions.** posed, the result must have been different; but this furnishes no reason for not according it all the consideration due to the

final adjudication on the issues involved. She was served with the original notice, precisely as exacted

**5. HOMESTEAD: abandonment by husband.** by statute. A guardian ad litem was duly appointed, and answered, as did the regular

guardian. Decree was entered as prayed, quieting title in Mrs. Walker as against Mrs. Singleton. This necessarily terminated her claim to the property. As seen, this decree was entered March 26, 1909. On September 23d following, Singleton withdrew his answer and cross-petition, and thereafter asserted no right to nor gave attention to the property until he filed the petition in this case, October 12, 1913, more than four years subsequent to receding from the issues in the suit to quiet title. As he was a party thereto, he must be assumed to have had knowledge that title had been quieted in Mrs. Walker as against his wife, and thereafter, during all this time, he acquiesced in the loss of her homestead right in the property and fee therein, and his conduct cannot be viewed otherwise than as an abandonment of all claim thereto as a homestead. The decree of the trial court may safely be planted on this ground, and it is—*Affirmed.*

PRESTON, C. J., EVANS and GAYNOR, JJ., concur.