ADAY *v.* CHIMES SCHOOL DISTRICT No. 49.

4-7810                                    191 S. W. 2d 963

Opinion delivered January 28, 1946.

*Opie Rogers,* for appellant.

*W. F. Reeves,* for appellee.

ED. F. McFADDIN, Justice. This is a controversy between a school district and one of the teachers, and necessitates the determination of the effect, each upon the other, of Act 96 of 1943 and Act 136 of 1943.

On April 14, 1944, appellant, Mrs. Opal Aday, entered into a written contract with the appellee (hereinafter called "District"), whereby appellant taught the school for the district for the full term beginning July 17, 1944, and ending March 3, 1945. At the time of signing

this contract, Mrs. Aday was related to one of the directors (Carl Mathis) within the fourth degree; so, in compliance with Act 96 of 1943, she secured and filed with the district a petition signed by the requisite number of qualified electors as designated and specified in said act. After the close of the school term (on March 3, 1945, as aforesaid) the district did not give Mrs. Aday any written notice that her contract would not be renewed for the next school term (beginning July, 1945); neither did Mrs. Aday notify the district in writing of her resignation. Such notices are specified by § 3 of Act 96 of 1943, which amended § 4 of Act 319 of 1941 which last-mentioned act is called the "Arkansas Teachers' Salary Law."

In the annual school election in the spring of 1945 Clifford Aday was elected director. He was the husband of Mrs. Opal Aday. Thus, Mrs. Aday was related to two of the three members of the new school board: being the niece of Carl Mathis and the wife of Clifford Aday. Dissatisfaction and dissension arose in the district; and someone suggested that the previous petition of Mrs. Aday (under Act 96 of 1943) expired with the term she had already taught, and that she would have to secure and file with the district a new petition signed by the requisite number of qualified electors in compliance with Act 96 of 1943 before she could teach the school term beginning July 16, 1945, and ending in March, 1946. No such new petition covering the 1945-46 term was filed with the district, and the district, therefore, refused to allow. Mrs. Aday to teach in the term beginning July, 1945. Thereupon Mrs. Aday filed action against the district for damages. From an adverse judgment in the circuit court, she brings this appeal.

Mrs. Aday claims: (1) that she secured the petition in 1944 signed by the majority of the qualified and designated electors of the district in compliance with Act 96 of 1943; (2) that on said petition she was employed by the district under a written contract which the law (§ 3 of Act 136 of 1943) stipulated would automatically be renewed for the next term unless notice in writing be given to the contrary; and (3) that the district gave her no such notice. On these facts she claims the right to teach for

the term beginning in July, 1945. In other words, Mrs. Aday contends that the automatic renewal provision of § 3 of Act 136 of 1943 made it unnecessary for her to secure any further petition from the electors of the district under Act 96 of 1943. The district denies these contentions. Counsel for appellant states the issue as follows:

"The one question before this court is, was it necessary for appellant to secure a petition from the qualified electors of this district in order to renew or extend her contract, since she was not notified that she would not be retained and did not notify the directors that she would resign."

Such is the issue before this court.

I. *Act 96 of 1943* is the most recent amendment of a statute that has existed in one form or another since 1901. The history of that statute, and a study of the cases construing it is enlightening and apropos:

(1) The original act against the employment of relatives seems to have been Act 205 of 1901, and became § 7616 of Kirby's Digest; and was amended by Act 206 of 1913, and became § 9029 of Crawford & Moses' Digest.

(2) This last-mentioned section does not appear to have been expressly repealed by Act 169 of 1931 (The School Law), but was superseded by subdivision D of § 96 of Act 169 of 1931, which last-mentioned subdivision became subdivision (d) of § 11535 of Pope's Digest.

(3) The subdivision, as mentioned, was amended by Act 389 of 1941, which, in turn, was amended by Act 96 of 1943. The last-mentioned act was the law in effect when the contract was made between appellant and appellee on April 14, 1944.

Act 96 of 1943 has not been construed by this court; but when § 7616 of Kirby's Digest (as amended by Act 206 of 1913) was in effect, and when § 9029 of Crawford & Moses' Digest was in effect, the statute, with certain omissions not here material, read as follows:

"Hereafter all school directors . . . are hereby prohibited from employing any person as teacher in said

school related to them by consanguinity or affinity within the fourth degree, unless 2/3rds of the patrons of said school shall petition them to do so.''

Under that statute this court held in 1920 in the case of *School District* v. *Perrymore,* 143 Ark. 64, 219 S. W. 316; and also in 1923 in the case of *Neal* v. *Bethea,* 158 Ark. 403, 250 S. W. 336, that the petition of the patrons would have to be filed for *each term* of the school where the teacher so related was employed. In *Neal* v. *Bethea, supra,* the court said:

''In *School District* v. *Perrymore,* 143 Ark. 64, 219 S. W. 316, we said: 'In view of the fact that the citizenship of a school district is constantly changing and that patrons might change their minds from time to time, it is not probable that the Legislature had the purpose and intent in enacting the statute to allow one expression of opinion on the part of the patrons to govern all subsequent employments. We think the purpose and intent of the act was to make each employment of a relative of any member of a board of directors, within the prohibited degrees, dependent upon the consent of two-thirds of the existing patrons of the school. In other words, that a petition, bearing the requisite number of names, can justify an employment for one period of time only.'

''In that case the petition was to authorize the directors to employ a teacher for the summer school for 1917 and any succeeding school they might see fit to employ him. We held that the petition for 1917 or 'any succeeding school they might see fit to employ him to teach' would not authorize the employment to teach the school in 1918-1919. The petition in the case at bar was for the summer and winter term, and contemplated only one contract of employment for a definite term. It did not vest the board, as in the case above cited, with a 'roving commission' to employ a teacher for an indefinite term.''

The germane language in Act 96 of 1943 reads:

''Neither the husband nor wife of a school director, nor any person related within the fourth degree of consanguinity or affinity to any member of the school board

shall be employed by the school board in any capacity except as follows: (a) Teachers may be elected upon written petition of fifty per cent. of the qualified electors from the group constituting the parents of the grade group or groups to be taught by the teacher in question *for the school year for which the election is made.*" (Italics our own.)

In view of the holdings of this court in *School District* v. *Perrymore, supra,* and *Neal* v. *Bethea, supra,* and in view of the above italicized language, it is clear that if Act 96 of 1943 is still in effect, then Mrs. Aday was required to secure a new petition in 1945 signed by a majority of those specified in the act before she could teach the 1945-46 term. The question then becomes whether Act 96 of 1943 is still in effect.

II. *Act 136 of 1943 is Claimed by the Appellant to have Repealed Act 96 of 1943 by Implication.* No express repeal is claimed. The part relied on by Mrs. Aday as effecting such repeal is § 3 of Act 136 of 1943, which reads:

"Every contract of employment hereafter made between a teacher and a board of school directors shall be renewed in writing on the same terms and for the same salary, unless increased or decreased under the provisions of the law, for the school year next succeeding the date of termination fixed therein; unless within ten days after the date of the termination of said school term, the teacher shall be notified by the school board in writing delivered in person or mailed to him or her at last and usual known address by registered mail that such contract will not be renewed for each succeeding year, or unless the teacher within ten days after close of school shall deliver or mail by registered mail to such school board his or her written resignation as such teacher, or unless such contract is superseded by another contract between the parties."

The quoted language, except as to differences not here essential, is found in § 4 of Act 319 of 1941. In considering the question of a repeal by implication, the primary object is to ascertain the legislative intent; and in

this effort there are certain well recognized rules to be considered. Three of these are:

(1) Repeals by implication are not favored. *Vick Consolidated School District* v. *New,* 208 Ark. 874, 187 S. W. 2d 948, and authorities therein cited.

(2) To result in a repeal of an earlier act by implication, either (a) the later act must be on the same subject and plainly repugnant to the former act, or (b) the later act must cover the whole subject of the earlier, and plainly show that the latter was intended as a substitute for the former act. *Coats* v. *Hill,* 41 Ark. 149; *C., R. I. & P. Ry. Co.* v. *McElroy,* 92 Ark. 600, 123 S. W. 771; *Carpenter* v. *Little Rock,* 101 Ark. 238, 142 S. W. 162; *Anthony* v. *St. L. Ry. Co.,* 108 Ark. 219, 157 S. W. 394; West's Digest, "Statutes," § 161; see, also, 50 Am. Jur. 550.

(3) "Another cardinal rule of construction is that, where two acts were under consideration of the Legislature at the same time, and were passed at the same session, this strengthens the presumption that there was no intention to repeal one by the other. *Mays* v. *Phillips Co.,* 168 Ark. 829, 275 S. W. 5, 279 S. W. 366, and *Standley* v. *County Board of Education,* 170 Ark. 1, 277 S. W. 550." This quotation is the language of Mr. Chief Justice HART in the case of *Merchants' Transfer Co.* v. *Gates,* 180 Ark. 96, 21 S. W. 2d 406. See, also, *McCain* v. *Farmers' Electric Coop. Corp.,* 206 Ark. 15, 172 S. W. 2d 933; and see, also, 50 Am. Juris. 553. Concerning the two acts here involved, the legislative records reflect: Act No. 96 of 1943 was H.B. No. 92, introduced January 21, 1943; passed by the House January 22, 1943; passed by the Senate February 22, 1943; approved by the Governor February 24, 1943. Act No. 136 of 1943 was Senate Bill No. 91, introduced in Senate January 25, 1943; passed by the Senate February 11, 1943; passed by the House February 19, 1943; approved by the Governor March 1, 1943.

Applying these three rules as aids in the determination of the legislative intention in the case at bar, we reach the conclusion that § 3 of Act 136 of 1943 does not

repeal Act 96 of 1943. With both acts given full effect, the section of Act 136, quoted hereinbefore, means that the district cannot renew in writing for the next term the contract, of any teacher, related to any school director within the prohibited degree, unless, within the prescribed time (ten days after the close of the term) the teacher so related files the petition required by Act 96 of 1943. This construction avoids a repeal by implication, demonstrates that there is no irreconcilable conflict between said acts 96 and 136, and allows to stand both acts passed at the same session of the Legislature.

It follows that the judgment of the circuit court was correct, and is in all things affirmed.