PENNEY *v.* VESSELLS.

4-9956                                                    253 S. W. 2d 968

Opinion delivered December 22, 1952.

Rehearing denied February 2, 1953.

*Collins, Core & Collins,* for appellant.

*Byron Goodson* and *E. K. Edwards,* for appellee.

ED. F. McFADDIN, Justice. The determination of this case turns on the validity of a contract for sale of the homestead of an insane wife.

Appellant, Ralph Penney, owned property in Sevier County, which was occupied as a homestead by himself and his wife, Mrs. Juanita Penney. She was insane, although she had no legal guardian until Penney was so appointed on October 8, 1951. On September 12, 1951, Penney and appellee, H. G. Vessells, entered into a contract (Penney being designated as First Party and Vessells, as Second Party) which provided, *inter-alia*: (1) that Penney agreed to sell and Vessells agreed to buy

the Penney homestead, and also a restaurant and tourist court business located on the homestead:[1] (2) that Vessells would deposit $2,500 with the named escrow agent and could then take possession of the restaurant pending the completion of the entire transaction; and (3) the contract further provided:

"First party shall immediately start Court proceedings in order to clear up the interest of First Party's wife in said property. Upon the Court allowing a conveyance of the said property clear of the interest of the said wife, then the First Party shall deliver a Warranty deed conveying said property to Second Party to the said escrow agent. . . . In the event the First Party is unable to convey clear title to said property to the said Second Party, the said escrow agent shall return all cash payments to the said Second Party and this contract shall then be terminated. In the event the First Party is able to convey clear title to said property to the said Second Party, the said Escrow agent shall turn over the cash payments, note and mortgage, all of which were made by the Second Party, to the First Party and said escrow agent shall deliver the said Warranty Deed, made by the First Party, to the Second Party. In the event the Second Party refuses or is unable to complete this contract, all cash payments made by the said Second Party shall be turned over to the said First Party as his liquidated damages. . . ."

In accordance with the said contract, Vessells deposited the $2,500 with the Escrow Agent, and took possession of the restaurant a few days later. He was immediately informed by Mrs. Juanita Penney's father (who lived with the Penneys) that appellant, Ralph Penney, could not convey the property. Vessells kept possession of the restaurant for a day and a night, and then returned possession to Penney. A large portion of the evidence is directed to the reason why Vessells surrendered possession. Witnesses for Penney claimed that Vessells became "sick of his bargain", and that Vessells realized he could not successfully manage the restaurant.

---

[1] And also six additional acres not homestead.

Vessells claimed defect of title, and that the entire trade had been misrepresented by Penney. We regard all such evidence as unimportant, because the main issue is the homestead question, as hereinafter discussed.

At all events, after Vessells surrendered possession of the restaurant, Penney then had himself appointed guardian of the person and estate of his insane wife, and procured what he claims to be full power from the Probate Court to carry out the contract with Vessells for the sale of the homestead. Then on November 6, 1951, Penney filed the present action against Vessells and the Escrow Agent for the $2,500 as liquidated damages. The Escrow Agent paid the money into the registry of the Court and was discharged. Vessells resisted the action, making the defense, *inter-alia*, that Penney was legally unable to make a valid contract for the conveyance of the homestead because of the insanity of Mrs. Penney. The Circuit Court, sitting as a jury, held the contract to be void on account of the homestead question, and ordered the $2,500 paid to Vessells, less $180 which Vessells obtained from the restaurant while operating it. Both sides have appealed.

We affirm the Circuit Court judgment in favor of Vessells. Section 50-415 Ark. Stats. says:

"No conveyance, mortgage or other instrument affecting the homestead of any married man shall be of any validity except for taxes, laborers' and mechanics' liens, and the purchase money, unless the wife joins in the execution of such instrument and acknowledges the same."

We have construed and applied this Statute in scores of cases, some of which are *Pipkin* v. *Williams,* 57 Ark. 242, 21 S. W. 433, 38 A. S. R. 241; *Waters* v. *Hanley,* 120 Ark. 465, 179 S. W. 817; *Oliver* v. *Routh,* 123 Ark. 189, 184 S. W. 843; *Ferrell* v. *Wood,* 149 Ark. 376, 232 S. W. 577, 16 A. L. R. 1033; *Bowden* v. *Wilson,* 214 Ark. 828, 218 S. W. 2d 374.

In *Ferrell* v. *Wood, supra,* we held that when the husband made a contract to convey the homestead and

the wife did not join in the contract, then the husband would not be liable in damages for breach of the contract upon refusing to execute the deed. In so holding, we quote with approval this language:

" '. . . it seems to us that to hold that a person is liable in damages for the nonperformance of a contract which he is under no legal obligation to perform would be illogical, and without analogy or precedent in the law. The very proposition involves a legal inconsistency. We think that on legal principles such a contract must be held void for all purposes, and not to constitute the basis of any action against the obligor. There are also strong practical considerations in favor of this view. While it is true, as counsel suggests, that to hold the husband liable for damages would not deprive him or his family of their homestead, yet to force him to the alternative of securing his wife's signature to the conveyance, or of being mulcted in damages for not doing so, and to place the wife in the dilemma of either having to sign the deed or see her husband thus mulcted in damages might, and naturally would, often indirectly defeat the very object of the statute. There is nothing unjust to the obligee in holding such a contract absolutely void for all purposes: He is bound to know the law, and he always has actual notice, or the means of obtaining actual notice, of the fact that the land with which he is about to deal is a homestead.' "

In *Waters* v. *Hanley, supra,* Waters, without joinder of his wife, entered into a contract with Hanley whereby for $6,500 cash paid, Waters agreed to deliver to Hanley, within 30 days, a deed to, and possession of, the Waters homestead. Within said 30-day period, the Waters house was destroyed by fire, without fault of either party. Thereupon, Waters and his wife tendered to Hanley a deed, duly signed and acknowledged by Mr. and Mrs. Waters. Hanley refused the deed and sued to recover the $6,500 purchase money paid. In affirming a recovery

by Hanley, we pointed out that by Statute [2] the original contract was void because Mrs. Waters did not sign and acknowledge it, and we said:

"Under the facts of this case, the husband did not have the ability to carry out the contract made by himself for the conveyance of his homestead, and the equitable title never vested in his vendee. It does not help the case any that the wife after the fire joined with the husband in the execution of a deed. This was her voluntary act, and was not done in compliance with the requirements of the contract."

Some of the Justices of this Court are of the opinion that our case of *Waters* v. *Hanley, supra,* is determinative of the case at bar; but the majority of the Court holds that under the existing condition of our law, the homestead of an insane wife cannot be sold while such homestead right continues. Well considered cases from other jurisdictions, having statutes somewhat similar to ours, deny the power to convey the homestead of an insane wife.[3] In 26 Am. Jur. 96, such holdings are summarized:

"The authorities, for the most part, hold that in the absence of statute, the insanity of one of the spouses does not dispense with the necessity for the joinder of both in the alienation of any interest in the homestead; the other spouse may not execute a valid and effectual conveyance or encumbrance of the property, the consequence being that its alienation is impossible. This is true, in the absence of statute, even though the husband has been appointed guardian by the court, and has secured leave to execute the instrument. . . . The joinder of the regularly appointed guardian of the insane spouse in the conveyance or encumbrance is deemed, ordinarily, not to

---

[2] Now § 50-415 Ark. Stats.

[3] Some such cases are *Curry* v. *Wilson,* 45 Wash. 19, 87 Pac. 1065; *Locke* v. *Redmond,* 6 Kan. App. 76, 49 Pac. 670, affirmed in 59 Kan. 773, 52 Pac. 97; *Singleton* v. *National Land Co.,* 183 Iowa 1108, 167 N. W. 97; *Flege* v. *Garvey,* 47 Cal. 371; *Weatherington* v. *Smith,* 77 Nebr. 363, 109 N. W. 381, 124 A. S. R. 855, 13 L. R. A., N. S. 430. See also Annotations in 13 L. R. A., N. S. 430, 9 Am. Cas. 14, 45 A. L. R. 432, and 155 A. L. R. 306.

be her consent, within the meaning of homestead acts governing conveyances, and a mortgage thus executed is invalid.''

Turning then to our own statutes, we find only the following as having even the most remote bearing on the question; and we comment on each such statute:

(a) Section 215 of Act 140 of 1949 (now found in § 57-628 of the 1951 Pocket Supplement to Ark. Stats.) relates only to homestead contracts made *before* insanity occurred.

(b) Section 226 of Act 140 of 1949 (now found in § 57-639 of the 1951 Pocket Supplement to Ark. Stats.), in referring to the sale of the real property of the ward, says that it includes the homestead of *minors*. The inclusion of the *minor's* homestead and the failure to mention the *insane's* homestead calls for the application of the maxim, *''inclusio unius est exclusio alterius.''*

(c) Section 534 of the Civil Code (as found in § 34-1835 Ark. Stats.) was amended by Act 349 of 1949; and the amendatory Act (as now found in § 34-1835 of the 1951 Pocket Supplement to Ark. Stats.), if not repealed by Act 140 of 1949 (a question on which we need express no opinion), lists survivorship, entirety, tenancy in common and joint tenancy, but does not mention homestead; and such failure gives application to the maxim, *''inclusio unius est exclusio alterius.''*

(d) Act 402 of 1941 (found in § 57-433 Ark. Stats.), even if not repealed by Act 140 of 1949, relates only to the homestead of a *surviving* spouse, and not to the homestead of an *insane* spouse.

Thus there is no statute in Arkansas specifically authorizing the sale of the homestead of an insane wife. Furthermore it is well to point out that § 50-415 Ark. Stats. comes to us from Act 64 of 1887, which was an Act relating specifically to homesteads. To hold that any of the Acts above listed, in (a) to (d) inclusive, repealed or amended § 50-415 Ark. Stats. would be to accomplish such repeal or amendment by implication only, and im-

plied repeals and amendments are not favored. As regards repeals by implication, see *Aday* v. *Chimes School Dist.*, 209 Ark. 675, 191 S. W. 2d 963. As regards amendments by implication, see Sutherland on Statutory Construction, 3rd Ed. Sec. 1913:

"Amendments by implication, like repeals by implication, are not favored and will not be upheld in doubtful cases. The legislature will not be held to have changed a law it did not have under consideration while enacting a later law, unless the terms of the subsequent act are so inconsistent with the provisions of the prior law that they cannot stand together."

Therefore, the majority of this Court holds that there is no legislation in Arkansas empowering the Probate Court to sell the homestead of an insane wife; and that the judgment in favor of Vessells is affirmed on direct appeal.

We also affirm the Circuit Court judgment on Vessell's cross appeal. He had charge of the restaurant for the time heretofore indicated, and took the proceeds from the business; and there is some substantial evidence from which the Circuit Court could have found that this amounted to the sum of $180.

Affirmed on both direct and cross appeal.